John D’Apice, J.
In this summary proceeding for nonpayment, the parties, on an agreed statement of facts, have submitted this controversy to the court concerning the legal effect of a clause in a residential renewal lease agreement and the application of the Emergency Tenant Protection Act of 1974 (L 1974, ch 576) thereto.
The respondent tenant, by a written lease dated April 24, 1973 rented an apartment from the petitioner landlord for a term of three years, commencing on May 1, 1973 and ending on April 30, 1976 at a rental of $258.50 per month.
Prior to the expiration of the lease, on or about March 19, 1976, the parties entered into a renewal lease agreement (on a form lease drawn by the landlord) for an additional three-year term commencing May 1, 1976 at a new rental of $301.15 per month. This increase in rent of 16ti% properly followed the increase permitted by the Westchester County Guidelines Board for renewal of leases expiring between June 30, 1975 and July 1, 1976.
The lease renewal also contained the following clause: "Where the rent Guidelines Board, or any agency having jurisdiction over rental shall permit an increase or decrease in rent, over or under the amount set forth as the rent payable during this extended term, both parties agree to be bound by the determination, and tenant agrees to pay any such increase.”
For the months of May and June, 1976 the respondent paid the agreed rental of $301.15. In July of 1976 the rent guidelines board enacted a new rent ruling to the effect that for leases expiring between July 1, 1976 and June 30, 1977, only a 6% increase would be permitted over the legal regulated rent.
For the month of July, 1976 the respondent tendered rent in an amount 10 less than $301.15, which payment was refused by the petitioner, who then commenced this proceeding.
From a cursory glance of the aforesaid clause, it appears that the parties intended an increase or decrease of the rent during the term of the lease in direct proportion to and *322 whenever an increase or decrease was granted by the guidelines board.
It is the tenant’s contention that the aforesaid clause was a valid escalation clause, and the parties agreed in unambiguous terms that the rent set forth in the lease renewal might be raised or lowered during the extended term. Therefore, the act of the board in affixing a guideline of 6% had the effect of decreasing the rent for the benefit of his tenancy, so that the correct rental for July, 1976 to the end of the term is $274.01 per month, 6% above the legally regulated rent.
The landlord argues that the board’s guideline is only applicable to leases which commence on or after July 1, 1976. He further argues that the word "decrease” in the clause refers to a reduction in rent by reason of "decreased services” or "equipment” or "benefits.”
However, the issue presented to the court is much broader than simply the legal interpretation of the above lease provision. The real question is whether the clause which the parties agree is an "escalator clause” is valid at all in light of the Emergency Tenant Protection Act and the guidelines enacted pursuant thereto.
Subdivision (d) of section 2502.5 of the Emergency Tenant Protection Regulations (9 NYCRR 2502.5 [d]), enacted pursuant to the Emergency Tenant Protection Act of 1974, entitled "Escalator Clause” states as follows: "Regardless of whether an escalator clause was contained in the last effective lease or other rental agreement prior to the local effective date of the act, no renewal lease or vacancy lease becoming effective on or after the local effective date shall provide for any escalator clause except as authorized in paragraph (2) of subdivision (c) of this section. ” (Emphasis added.)
Paragraph (2) of subdivision (c) of said section only permits the insertion of escalator clauses in leases entered into between the effective date of the Emergency Tenant Protection Act (May 29, 1974) and the effective date of the first applicable guidelines (1974).
The reasons for the restriction on escalator clauses are obvious in light of the legislative intent of the Emergency Tenant Protection Act which creates an orderly administrative method for regulating rent increases.
Under this procedure, the rent guidelines board promulgates annual permissible rent increases for leases which ex *323 pire during the forthcoming 12 months. Each year, new guidelines must be issued, which, in turn, are applicable to leases which expire during the ensuing 12 months. At the end of a lease term, a landlord must issue the tenant a renewal lease for a term of one, two, or three years (the length of term being chosen by the tenant) limited by the increases (or decreases) allowed by the guidelines board for leases commencing in the designated year. By this method the act protects the tenant from annual increases if he or she signs a three-year lease. To give the escalation clause of this lease, the intended escalating effect urged by tenant would effectively negate the Emergency Tenant Protection Act’s provision for two-and three-year leases.
The aforesaid clause in the renewal lease must necessarily be interpreted subject to the intent of the Emergency Tenant Protection Act and the rules and regulations established thereunder. The 6% increase established by the Guideline Board for the fiscal year 1976-1977 refer in no uncertain terms to leases commencing between July 1, 1976 and June 30, 1977. If the board intended the 6% guideline to apply to leases covering any other period, it could easily have spelled this out in unambiguous terms. By its failure to do so, the court can only conclude the intent was to limit the 6% increase to only those leases that were to commence between July 1, 1976 and June 30, 1977 and no other leases.
Applying the same reasoning to subject lease, any clause referring to an adjustment by the guidelines board, either upwards or downwards would be covered by the guidelines effective for that period, viz: the 16ti% increase allowed in September, 1975 for a three-year lease. In other words, if the guidelines for 1975-1976 were changed for any reason, the clause in question would be utilized to adjust the rent accordingly. Since the guidelines for 1975-1976 did not change, the clause was void for any other subsequent guideline. To interpret it otherwise would be tantamount to allowing an annual adjustment of the rent every time a new guideline would be established during the term of the lease, thereby negating the very principles of protection in a two-or three-year lease.
Unfortunately for the tenant, the guidelines for the 1976-1977 period were decreased. They could just as well have been increased, in which event, the tenant would have been protected on the same reasoning from any effect of that increase.
Accordingly, judgment is awarded to the landlord in the *324 sum of $301.15 representing the rent for the month of July, 1976, which rent is hereby established as the monthly rental for the remainder of subject lease, together with $100 attorney’s fees.
Final order and warrant to issue with five days’ stay after entry of judgment.